**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **HUNT,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action No. 09-C-2071** |
| **v.** | ) | |
| | ) | **Judge Matthew F. Kennelly** |
| **DART,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO JOINT DEFENDANTS'
MOTION TO DISMISS COUNT III OF FOURTH AMENDED COMPLAINT OR,
IN THE ALTERNATIVE, TO BIFURCATE AND STAY DISCOVERY**

Dated:  July 22, 2010

Kenneth G. Schuler
Lyndsay D. Speece
Marissa Downs
Alicia Weis
LATHAM & WATKINS LLP
233 South Wacker Drive
Suite 5800
Chicago, Illinois  60606
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

STATEMENT OF RELEVANT FACTS ..................................................................1

    A.    Defendants Fail To Provide Prompt And Adequate Medical Attention  To Plaintiffs...............................................................................................2

        1.    McCorker, Giles, Romero and Cortez Fall Ill Due To  Defendants' Constitutionally Violative Customs.............................................2

        2.    Hunt Experiences Prolonged Suffering Resulting From Defendants' Unconstitutional Customs ......................................3

    B.    Defendants' Conduct Evinces A Pattern Of Deliberate Indifference .....................3

ARGUMENT .......................................................................................................4

    A.    Defendants' Motion To Dismiss Count III Must Fail...............................................4

        1.    The Complaint States A Claim For Which Relief Can Be Granted ...........4

        2.    Standard For Monell Claims......................................................5

        3.    The Facts Alleged By Plaintiffs, If Proved, Sufficiently Establish Defendants' § 1983 Fourteenth Amendment Monell Violation .................5

            a.    Plaintiffs Adequately Allege The Existence Of Deficient Municipal Policies To Survive A Motion To Dismiss....................6

                (1)    Defendants' Custom Of Failing To Timely Investigate  And Respond To Detainee Requests For Medical Treatment ......................................6

                (2)    Defendants' Custom Of Ignoring And Failing  To Implement Directives From Medical Personnel .................7

                (3)    Defendants' Custom Of Delaying Investigation Into Detainee Health Conditions..........................................7

                (4)    Defendants' Custom Of Withholding Important Information Related To Detainees' Health ..........................8

            b.    Defendants' Customs Resulted In Constitutional Harm To Plaintiffs By Prolonging Their Suffering And Exacerbating Their Illnesses .................................................................8

        4.    Defendants' Motion To Dismiss Mischaracterizes The Allegations In The Complaint And Relies On Inapposite And Inapplicable Case Law...................................................................9

a.      Plaintiffs Allege More Than A Single Instance Of
Wrongdoing ....................................................................................9

b.      The Complaint Contains More Than Boilerplate
Allegations ...................................................................................11

B.      DEFENDANTS FAIL TO SHOW SUFFICIENT JUSTIFICATION  TO
SEPARATE AND STAY DISCOVERY OF COUNT III ...................................12

1.      Bifurcation Of Count III Is Inappropriate At This Stage...........................13

2.      Plaintiffs' Monell Claim Does Not Depend On Plaintiffs
Establishing Individual Liability Under Claims I And II .........................14

CONCLUSION..........................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## CASES

Ashcroft v. Iqbal,
    129 S.Ct. 1937 (2009) ............................................................................................ 4

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ............................................................................................... 4

City of Los Angeles v. Heller,
    475 U.S. 796 (1986) ............................................................................................. 14

EEOC v. Concentra Health Servs., Inc.,
    496 F.3d 773 (7th Cir. 2007) ................................................................................. 4

Frieri v. City of Chicago,
    127 F. Supp. 2d 992 (N.D. Ill. 2001)............................................................... 11, 12

Garrett v. Dart,
    No. 09-cv-1398, 2010 WL 2721876 (N.D. Ill. July 8, 2010) ..................... 5, 6, 11, 12

Gibson v. City of Chicago,
    910 F.2d 1510 (7th Cir. 1990) .............................................................................. 12

Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7,
    579 F.3d 811 (7th Cir. 2009) ................................................................................. 5

Hossman v. Blunk,
    784 F.2d 793 (7th Circuit 1986) ........................................................................... 12

Kujawski v. Bd. of Com'rs of Bartholomew Cnty., Ind.,
    183 F.3d 734 (7th Cir. 1999) ................................................................................. 5

Marcavage v. City of Chicago,
    467 F. Supp. 2d 823 (N.D. Ill. 2006)...................................................................... 5

McTigue v. City of Chicago,
    60 F.3d 381 (7th Cir. 1995) ................................................................................... 5

Medina v. City of Chicago,
    100 F. Supp. 2d. 893 (N.D. Ill. 2000).............................................................. 13, 14

Monell v. Dep't Soc. Servs.,
    436 U.S. 658 (1978) ........................................................................................... 5, 8

Petty v. City of Chicago,
    No. 07 C 7013, 2009 WL 161698 (N.D. Ill. Jan. 22, 2009) .................................................. 5, 8

Sivard v. Pulaksi Cnty.,
    17 F.3d 185 (7th Cir. 1994) ...................................................................................................... 11

Terry v. Cook Cnty. Dep't of Corrs.,
    No. 09 C 3093, 2010 WL 2720754 (N.D. Ill. July 8, 2010).................................................... 13

Thomas v. Cook Cnty. Sheriff's Dep't,
    588 F.3d 445 (7th Cir. 2009) ............................................................................................. 14, 15

Treece v. Hochstetler,
    213 F.3d 360 (7th Cir. 2000) .................................................................................................. 14

Plaintiffs Tavares Hunt ("Hunt"), Lee McCorker ("McCorker"), Bruce Giles ("Giles"), Jose H. Romero ("Romero"), and George Cortez ("Cortez") (collectively, "Plaintiffs") by and through their attorney, Latham & Watkins LLP, hereby respond as follows to the Motion to Dismiss Count III of Fourth Amended Complaint, or in the Alternative, to Bifurcate and Stay Discovery brought by Defendants the County of Cook ("Cook County"), Dr. Avery Hart ("Dr. Hart"), Sheriff Thomas Dart ("Sheriff Dart"), and Superintendant Michael Miller ("Superintendant Miller") (collectively, "Defendants").

## INTRODUCTION

Plaintiffs are pre-trial detainees who suffered severe and prolonged medical ailments— including excessive vomiting, diarrhea, and stomach cramps—as a result of a norovirus outbreak and bacterial infection during the time they were housed in Cook County Jail ("CCJ") Division 10. Plaintiffs' illnesses were unnecessarily exacerbated due to Defendants' collective indifference to their suffering and failure to timely and properly respond to Plaintiffs' repeated requests for medical treatment. Defendants' callous disregard of Plaintiffs' serious medical conditions and failure to take action to prevent, alleviate, or contain the source of Plaintiffs' pain caused significant harm to Plaintiffs' health and well-being.

## STATEMENT OF RELEVANT FACTS

In their supporting memorandum, Defendants ignore the factual allegations underlying Count III of the Fourth Amended Complaint (the "Complaint"). <u>See</u> Joint Defs.' Mem. Law Supp. Defs.' Mot. Dismiss Count III Fourth Am. Compl., or in the Alternative, Bifurcate and Stay Disc. (Dkt. #88) ("Defs. Mem.") at 1-2. Accordingly, the facts alleged in the Complaint are addressed below.

A.    **Defendants Fail To Provide Prompt And Adequate Medical Attention To Plaintiffs**

   1.    **McCorker, Giles, Romero and Cortez Fall Ill Due To Defendants' Constitutionally Violative Customs**

In February and March 2009, a documented case of norovirus broke out amongst the detainees housed in CCJ Division 10. See Fourth Am. Compl. (Dkt. #1) ("Compl.") ¶¶ 11-12. Despite proliferation of the norovirus, Defendants delayed investigation and mitigation of the illness that ultimately afflicted approximately ninety (90) Division 10 detainees. Id. ¶ 12.

Plaintiffs McCorker, Giles, Romero, and Cortez were among those that experienced acute bouts of vomiting, diarrhea, and stomach cramping resulting from the gastrointestinal illness. Id. ¶ 18.   Between February and March 2009, these Plaintiffs submitted multiple grievances describing the severity of their symptoms and imploring Defendants to provide medical attention and information regarding the illness spreading throughout Division 10. Id. ¶¶ 18-22.

Despite repeated requests and grievances pleading for medical care and information, none of these Plaintiffs, except for McCorker, was ever examined, treated or received any form of medical attention. Id. ¶ 23. The medical attention McCorker received provided misinformation, bore no relation to his illness, and did not eliminate his suffering. Id. ¶ 21. Furthermore, Defendants failed to properly explain or notify Plaintiffs of the outbreak running rampant throughout Division 10. See id. Rather, in a standardized and untimely response, Defendant Superintendent Miller summarily rejected Plaintiffs' pleas and issued a perfunctory response stating that all detainees had received medical attention. Id. ¶ 24. This response came more than two months after the illness was first reported and failed to consider the individual grievance at issue, the symptoms complained of, or whether the detainee actually received medical attention. Id. ¶¶ 23-24. As a result of Defendants' utter disregard for Plaintiffs' health and safety, the Plaintiffs experienced prolonged suffering. Id. ¶¶ 18-22.

### 2. Hunt Experiences Prolonged Suffering Resulting From Defendants' Unconstitutional Customs

In December 2008 and again in June 2009, Hunt experienced excessive vomiting, diarrhea, and stomach cramps related to a bacterial infection.  Id. ¶¶ 26, 40.  In a similar manner as the other Plaintiffs, Hunt repeatedly submitted requests and grievances informing Defendants of his suffering and imploring Defendants for medical attention.  Id. ¶ 28.  After weeks of suffering, Hunt was finally seen by medical personnel.  Id. ¶ 30.  Nevertheless, Defendants repeatedly failed to implement the diet that a physician prescribed for Hunt in order to alleviate his symptoms.  Id. ¶¶ 32-33, 36-39.  As was their practice, Defendants failed timely to provide Hunt with prompt access to medical treatment and failed to implement medically recommended procedures.  Id. ¶¶ 27-29, 32-33, 36-39.

Failing to receive proper medical attention, Hunt experienced a recurrence of severe stomach problems in June 2009.  Id. ¶ 40.  Over the course of three months, Hunt submitted additional requests and grievances for medical treatment.  Id. ¶¶ 41-44.  At every turn, Defendants failed to timely respond to Hunt's pleas for medical treatment, failed to provide Hunt with necessary medical attention, and continually failed to implement Hunt's medically prescribed diet.  Id. ¶¶ 41-44.  As a result of Defendants' practice, Hunt's illness was exacerbated and he unnecessarily suffered for an extended period of time.  Id. ¶¶ 36-39.

### B. Defendants' Conduct Evinces A Pattern Of Deliberate Indifference

Plaintiffs brought this civil action under the Civil Rights Act of 1871, 42 U.S.C. § 1983, based on violations of the Fourteenth Amendment to the Constitution of the United States, including a joint claim of all Plaintiffs against the County Defendants.  Id. ¶ 1.  As outlined above, during the time Plaintiffs were housed in CCJ Division 10, Defendants consistently exhibited collective indifference to the health and well-being of detainees, including Plaintiffs.

3

Each Plaintiff experienced severe symptoms of excessive vomiting, diarrhea, and stomach cramps.  Id. ¶¶ 18-22, 26.   Although the sources of Plaintiffs' suffering were different, Defendants took the same approach in each instance, repeatedly failing to respond timely to requests for medical treatment, provide adequate information regarding the illnesses, and timely implement orders of medical personnel.  Id. ¶¶ 15, 23-25, 28, 31-45.  As outlined in Plaintiffs' Complaint, each of the Plaintiffs was damaged by Defendants' pattern of deliberate indifference to their health and safety and suffered significant harm as a result.  Id. ¶¶ 53, 59, 64.

## ARGUMENT

Defendants' motion to dismiss or, in the alternative, bifurcate Count III should be denied. Plaintiffs' Complaint is well-pleaded and establishes sufficient facts to support a Monell claim. Furthermore, the interests of convenience, economy, expediency, and avoidance of prejudice are not served by bifurcating Count III.

### A.    Defendants' Motion To Dismiss Count III Must Fail

#### 1.    The Complaint States A Claim For Which Relief Can Be Granted

To survive a motion to dismiss, a plaintiff must pass "two easy-to-clear hurdles."  EEOC v. Concentra Health Servs., Inc., 496 F.3d 773, 776 (7th Cir. 2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).  The complaint must give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests" and must plausibly suggest that the plaintiff has a right to relief.  Id. (quoting Twombly, 550 U.S. at 555).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). When considering a motion to dismiss, the court accepts the facts alleged in the complaint as true

and draws all reasonable inferences in favor of the plaintiff.  Hallinan v. Fraternal Order of Police, 570 F.3d 811, 820 (7th Cir. 2009).

### 2.        Standard For Monell Claims

In order to prevail on a Monell claim, a plaintiff must prove:  (1) a constitutional injury; (2) the existence of a deficient municipal policy or practice; (3) deliberate indifference to the alleged policy; and (4) a direct causal relationship between the alleged municipal policy and injury suffered by the plaintiff.  Petty v. City of Chicago, No. 07 C 7013, 2009 WL 161698, at *2 (N.D. Ill. Jan. 22, 2009) (citing Monell v. Dep't Soc. Servs., 436 U.S. 658, 694 (1978)).  A plaintiff may demonstrate the existence of municipal policy or custom in one of three ways: "proof of an express policy causing the loss, a widespread practice constituting custom or usage that caused the loss, or causation of the loss by a person with final policymaking authority." Kujawski v. Bd. of Com'rs, 183 F.3d 734, 737 (7th Cir. 1999) (citing McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir. 1995)).

There is no heightened pleading standard for Monell claims.  Marcavage v. City of Chicago, 467 F. Supp. 2d 823, 828 (N.D. Ill. 2006).  These claims are subject to Rule 8(a)(2)'s notice pleading mandate which requires a short and plain statement of the claim showing that the plaintiff is entitled to relief.  Id.  "Thus, Plaintiff need not plead particular facts upon which he bases his claim of an official policy or custom, and a 'short and plain statement' that a government entity's official policy or custom caused his injury is sufficient to survive a motion to dismiss."  Garrett v. Dart, No. 09-cv-1398, 2010 WL 2721876, at *3 (N.D. Ill. July 8, 2010).

### 3.        The Facts Alleged By Plaintiffs, If Proved, Sufficiently Establish Defendants' § 1983 Fourteenth Amendment Monell Violation

Plaintiffs have alleged facts that demonstrate Defendants violated Plaintiffs' Fourteenth Amendment Constitutional rights by virtue of Defendants' unconstitutional customs.  These

customs include (1) failing to timely respond and investigate requests for medical treatment; (2) ignoring and failing to implement recommendations of health care professionals; (3) delaying investigation and mitigation of serious medical conditions; and (4) withholding essential information pertinent to detainees' health and safety.   Compl. ¶ 61.   Accordingly, Count III should not be dismissed.

a.      <u>Plaintiffs Adequately Allege The Existence Of Deficient<br>Municipal Policies To Survive A Motion To Dismiss</u>

"[A]llegation[s] of a pattern of conduct or a series of acts violative of constitutional rights will in many cases raise an inference of municipal policy."   <u>Garrett</u>, 2010 WL 2721876, at *3.   A policy may be viewed as "systemic in nature" if the plaintiff "sustains the same constitutional deprivation multiple times."   <u>Id.</u>

Plaintiffs' Complaint sufficiently alleges the specific violative practices of the Defendants and establishes that all of the Plaintiffs sustained the same constitutional deprivation from these policies.   Although the source of Plaintiffs' illnesses are distinct, Defendants' response in each instance was the same.   That is, as to all Plaintiffs, Defendants (1) failed to investigate and respond to their requests for medical treatment; (2) failed to follow the recommendations of health care professionals to alleviate Plaintiffs' suffering; (3) impermissibly delayed investigation into Plaintiffs' health conditions; and (4) withheld information essential to the Plaintiffs' health and well-being.   We elaborate on each custom below.

*(1)    Defendants' Custom Of Failing To Timely Investigate<br>And Respond To Detainee Requests For Medical Treatment*

Plaintiffs' Complaint sufficiently alleges that Defendants had a wide-spread custom of failing to timely investigate and respond to detainee requests' for medical treatment.   Each of the Plaintiffs fell severely ill with symptoms of vomiting, diarrhea, and stomach cramps.   Compl. ¶¶ 18-22, 26.   Although Plaintiffs suffered at different times and from different illnesses, the

6

Defendants' dilatory and inadequate response was always the same.  Id. ¶¶ 15, 23-25, 28, 31-45.

Plaintiffs submitted multiple requests and grievances notifying Defendants of their suffering and

requesting medical attention.  Id. ¶¶ 19-22, 28, 37, 40, 41, 43.  Despite having knowledge of

Plaintiffs' ailments, at every turn, Defendants failed to timely respond to these requests and, in

several instances, failed to respond at all.  Id. ¶¶ 19-25, 28, 29, 37-39, 41-45.

*(2)      Defendants' Custom Of Ignoring And Failing*
*To Implement Directives From Medical Personnel*

Plaintiffs' Complaint also sufficiently alleges facts demonstrating Defendants' well-

settled custom of ignoring and failing to implement recommendations from health care

professionals.  In the instance of McCorker, Giles, Romero, and Cortez, Defendants failed to

take the steps recommended by the Illinois Department of Health to prevent the spread of the

norovirus outbreak.  Id. ¶ 15.  Notably, Defendants failed to implement regular cleaning of the

detainee cells and did not provide the detainees with soap or sanitary wipes.  Id.  Defendants'

custom was the same for Hunt.  After repeated orders from Dr. Patel, Defendants failed to

implement the restricted diet ordered for Hunt.  Id. ¶¶ 31-45.  In all instances, Defendants'

failure to implement these medically recommended and prescribed steps exacerbated the

suffering of Plaintiffs and prolonged their illnesses.

*(3)      Defendants' Custom Of Delaying Investigation*
*Into Detainee Health Conditions*

The Complaint likewise alleges facts that establish Defendants' custom and pattern of

delayed investigation into detainee ailments.  Almost thirty (30) days passed before Defendants

began investigating the norovirus outbreak, at which point approximately ninety (90) detainees

in Division 10 had been affected.  Id. ¶ 12.  In the same manner, Defendants waited several

weeks before looking into Hunt's complaints of vomiting, diarrhea, and stomach cramping, even

though CCJ staff witnessed Hunt vomiting.  Id. ¶¶ 26-29.  Furthermore, it took Defendants over

7

six months to investigate and address Hunt's complaints that he was not receiving his medically prescribed diet.  Id. ¶¶ 31-45.  Even after such review, and in the face of two formal orders from Dr. Patel, Defendants failed to implement Hunt's medically prescribed diet.  Id.

*(4)* *Defendants' Custom Of Withholding Important Information Related To Detainees' Health*

The facts contained in the Complaint evince Defendants' custom of withholding information vital to detainees' health and well-being.  Although almost ninety (90) detainees had fallen ill from the norovirus outbreak, Defendants failed to provide essential information regarding the virus, including its highly communicable nature, the number of persons afflicted, or any additional information concerning the illness.  Id. ¶¶ 12, 16.  Nor was any guidance given on how to prevent the disease from spreading or ways to mitigate its effects.  Id. ¶ 16.  For days, Plaintiffs were under the mistaken belief that their illness stemmed from improperly cooked food, and McCorker was misinformed that he had food poisoning.  Id. ¶¶ 18, 21, 22.  Hunt was similarly kept in the dark regarding aspects of his illness and its corresponding treatment.  Id. ¶¶ 28-38.  Furthermore, it was not until months of complaints and grievances that Hunt was told that the reason he was not receiving his medically prescribed diet was because he was not on the list.  Id. ¶¶ 31-37.  Even though such information was later revealed to him, it is still unknown whether Hunt has ever received the special diet Dr. Patel prescribed.  Id. ¶ 45.

b.   Defendants' Customs Resulted In Constitutional Harm To Plaintiffs By Prolonging Their Suffering And Exacerbating Their Illnesses

The Complaint also alleges facts sufficient to establish that Plaintiffs' suffering was prolonged and their illnesses were exacerbated as a result of Defendants' customs.  See Petty, 2009 WL 161698, at *2 (citing Monell, 436 U.S. at 694) (stating that plaintiff must also allege a causal relationship between the municipal policy and the injuries suffered).  McCorker, Giles,

Romero, and Cortez suffered extended periods of vomiting, diarrhea, and stomach cramping due to Defendants' customs.  Compl. ¶¶ 18-22.  Defendants delayed until the disease was rampant in CCJ Division 10 before even beginning an investigation into the illness.  Id. ¶ 12.  Additionally, Defendants failed to inform these Plaintiffs of the source of their illness or how to prevent its spread.  Id. ¶ 16.  Although Plaintiffs filed multiple requests for medical treatment, only McCorker was seen by a medical professional—such medical professional erroneously informing him that he had food poisoning.  Id. ¶¶ 19-22.  Defendants' failure to properly clean the cells or provide additional sanitary measures outlined by the Illinois Department of Health also contributed to Plaintiffs extended illness.  Id. ¶ 15.

Defendants' customs also caused Hunt's prolonged suffering.  Hunt experienced unnecessarily drawn-out bouts of vomiting, diarrhea, and stomach cramping because Defendants failed to promptly respond to, investigate, or even acknowledge his multiple requests for medical attention.  Id. ¶¶ 26-29.  Defendants also failed to implement the orders of Dr. Patel for over six months, and waited to even inform Hunt that he was not included on the special diet list.  Id. ¶¶ 31-45.  Such practices needlessly extended Hunt's suffering.

## 4. Defendants' Motion To Dismiss Mischaracterizes The Allegations In The Complaint And Relies On Inapposite And Inapplicable Case Law

### a. Plaintiffs Allege More Than A Single Instance Of Wrongdoing

Defendants' argument that Plaintiffs failed to adequately plead their Monell claim is devoid of merit.  Defs. Mem. 3-5.  Defendants assert that Plaintiffs merely allege "a single allegation of wrongdoing . . . insufficient to establish a policy, custom or practice."  Id. at 2, 4.  This argument is baseless and contradicted by the factual allegations in the Complaint.  Plaintiffs allege more than a single instance of wrongdoing; as detailed in Section I(C) of this Response, the Complaint is replete with facts demonstrating a series of violative acts on the part of

Defendants, raising an inference of custom well beyond any speculative level. Defendants' treatment of Plaintiffs' suffering was not a single, isolated incident. Defendants' practice was impermissibly to delay and disregard Plaintiffs' requests for medical treatment, turn a blind eye to Plaintiffs' suffering, ignore the suggestions of medical professionals, and withhold vital information relevant to Plaintiffs' health and well-being.

Nevertheless, Defendants argue that, because the norovirus outbreak was a single event, any action (or inaction) taken on the part of the Defendants in response to that outbreak cannot, as a matter of law, establish a policy, custom, or practice. Id. at 3-5. Defendants then paradoxically assert that Plaintiffs cannot rely on the constitutional deprivations suffered by Hunt to establish a custom or practice, as any deliberate indifference to Hunt was "wholly unrelated" to the norovirus outbreak. Id. at 4. This argument cannot stand.

First, it is counterintuitive to argue that conduct taken in response to a common cause cannot demonstrate a pattern or practice of unconstitutional activity. Second, Plaintiffs are aware of no case—and Defendants do not cite to any—that supports the bald assertion that only claims that are factually related may be used to support an inference of custom or policy. Defendants' argument that Hunt's claim is "wholly unrelated" because his illness derived from a separate source (a bacterial infection) is misguided. It is not the source of the illness that is relevant, but Defendants' response and treatment of Plaintiffs' ailments. McCorker, Giles, Romero, and Cortez contracted the norovirus and Hunt contracted a bacterial infection and possibly other illnesses. Regardless of the label attached to their diagnoses, all Plaintiffs suffered the same mistreatment as a result of Defendants' customs and practices.

Finally, even if Plaintiffs' alleged only a single instance of wrongdoing (which they do not), it is not fatal at the pleading stage to rely on allegations of a single example of

constitutional deprivation caused by an unconstitutional policy, custom, or practice.  See Garrett, 2010 WL 2721876 at *4.  For example, in Garrett a pretrial detainee at Cook County Jail, sued Sheriff Dart and Cook County (among others) under § 1983 alleging a municipal custom related to unnecessary delay in treating a toothache.  See id.  The Court denied a 12(b)(6) motion in that case, noting that the plaintiff had alleged an ongoing custom, policy, or practice of unconstitutional conduct that harms pre-trial detainees, even though the plaintiff failed to identify that anyone besides himself had been victimized by such custom.  Id.  In the same manner as Garrett, Plaintiffs here plausibly allege both that they suffered constitutional deprivations and that those deprivations were caused by an unconstitutional custom, policy, or practice of unconstitutional conduct.  As a result, Defendants' argument is unfounded and their motion to dismiss should be denied.

b.    The Complaint Contains More Than Boilerplate Allegations

Defendants erroneously characterize the facts set forth in the Complaint as "boilerplate allegations . . . without any factual allegations to support the general allegations."  Defs. Mem. 4. To the contrary, Plaintiffs do not rely on mere boilerplate allegations.  Plaintiffs identified and pleaded specific claims of wrongdoing by Defendants in the Complaint and supported those allegations with a ten-page, detailed factual summary.  Compl. ¶¶ 11-47.

Even if Plaintiffs had relied on "boilerplate allegations" (which they did not), that alone is not grounds for dismissal and Defendants reliance on Sivard v. Pulaksi Cnty., 17 F.3d 185, 188 (7th Cir. 1994), is misplaced.  See Defs. Mem. 4.  Sivard involved not a motion to dismiss, but rather a motion for summary judgment.  Id.  The standard used at the summary judgment stage is inapplicable in assessing a motion to dismiss a Monell claim.  See Frieri v. City of Chicago, 127 F. Supp. 2d 992 (N.D. Ill. 2001) (denying in part a motion to dismiss where defendant "confuse[d] the plaintiff's burden to establish liability to win the lawsuit—at trial or

11

summary judgment — with the plaintiff's minimal burden to give notice of her claims to withstand a motion to dismiss"); <u>see</u> <u>also</u> <u>Garrett</u>, 2010 WL 2721876 at *4; <u>Gibson v. City of Chicago</u>, 910 F.2d 1510 (7th Cir. 1990).  And, in any event, subsequent case law suggests that under the federal notice pleading regime, "boilerplate allegations" are sufficient to survive a motion to dismiss.  <u>Frieri</u>, 127 F. Supp. 2d at 995; <u>see</u> <u>also</u> <u>Garrett</u>, 2010 WL 2721876 at *4.

Defendants also mistakenly rely on <u>Hossman v. Blunk</u>, 784 F.2d 793, 794 (7th Cir. 1986).  Defs. Mem. 3, 4.  In <u>Hossman</u>, the plaintiff sued several jail guards alleging they subjected him to physical abuse and denied him medical treatment.  <u>Hossman</u>, 784 F.2d at 794. Although the district court dismissed the complaint for failure to allege that the plaintiff's injuries resulted from a custom or policy of the County, the Seventh Circuit nonetheless reversed and remanded, concluding that the plaintiff had in fact adequately alleged claims for municipal liability under § 1983 and "should therefore be given the opportunity to proceed on his claims that the defendants are liable in their official capacities." <u>Id.</u> at 796.

As alleged in the Complaint and detailed herein, the harms suffered by Plaintiffs go beyond a single instance of wrongdoing and do not constitute boilerplate allegations.  Taken as a whole, the allegations described in the Complaint plausibly establish that Defendants had in place customs or practices of being deliberately indifferent to the health and safety of detainees and therefore, Count III should not be dismissed.

**B.      DEFENDANTS FAIL TO SHOW SUFFICIENT JUSTIFICATION TO SEPARATE AND STAY DISCOVERY OF COUNT III**

Rule 42(b) allows federal courts the discretion to "order a separate trial of one or more separate issues [or] claims" in the interests of "[c]onvenience, to avoid prejudice, or to expedite and economize."  Fed. R. Civ. P. 42(b).  Although "a district court has the discretion to sever a <u>Monell</u> claim against a municipality from claims against individual[s] . . . . [n]othing . . . <u>requires</u>

bifurcation in every case." <u>Medina v. City of Chicago</u>, 100 F. Supp. 2d. 893, 894-95 (N.D. Ill.

2000) (emphasis in original).   Rather, "[d]istrict courts approach bifurcation with a pragmatic

mindset," examining the specifics of each particular case.   <u>Terry v. Cook Cnty. Dep't of Corrs.</u>,

No. 09 C 3093, 2010 WL 2720754, at *1 (N.D. Ill. July 8, 2010).

Courts in this District have identified factors weighing against bifurcation.   These include

concerns regarding delays resulting from bifurcated discovery and prejudice to the plaintiff from

such delays.   <u>Id.</u> at *2.   "The Court also recognizes that Plaintiff has the right to select the claims

that she wishes to pursue, and that even if pursuing a <u>Monell</u> claim may have minimal pecuniary

reward, the potential to deter future official misconduct is itself a proper object of our system of

tort liability."   <u>Id.</u> (internal quotations omitted); <u>accord</u> <u>Medina</u>, 100 F. Supp. 2d at 896.

In cases where discovery is in its infancy or has yet to start, bifurcation of claims may be

premature.   <u>Medina</u>, 100 F. Supp. 2d at 897 (noting when discovery has just begun, "neither the

parties nor the Court has the least idea what evidence actually would be offered at trial on the

<u>Monell</u> claim or just how prejudicial that evidence might actually be to the officers"); <u>see also</u>

<u>Terry</u>, 2010 WL 2720754 at *3 ("Bifurcation also may add unnecessary complexity and

confusion to the discovery process.").   Courts are also hesitant to grant bifurcation where the

issue of qualified immunity on behalf of the individual actors has not yet been resolved.   <u>Id.</u> at

898.

### 1.        Bifurcation Of Count III Is Inappropriate At This Stage

Here, bifurcation of Plaintiffs' <u>Monell</u> claim does not weigh in the interests of

convenience, an avoidance of prejudice, or expediting and economizing resources.   Notably, no

discovery has been taken at this point and it is difficult to assess whether any evidence solely

relevant to Plaintiffs' <u>Monell</u> claim would be offered at trial, much less be prejudicial to the

individual defendants.   As discovery has not yet begun, attempting to prematurely segregate

discovery requests does not serve any interests of convenience.  Furthermore, Plaintiffs may be prejudiced in obtaining discovery on Counts I and II if they are prohibited from discovering information related to Count III but nonetheless relevant to their other claims.

Further countenancing against bifurcation is the fact that Defendants Miller and Hart both assert qualified immunity as an affirmative defense.  Def. Sheriff Thomas Dart and Superintendent Miller's Answer, Affirmative Defenses and Jury Demand to Pls.' Fourth Am. Compl. (Dkt. #90) 23; Def. Hart and Cook County's Answer, Affirmative Defenses, and Jury Demand to Pls.' Fourth Am. Compl. (Dkt. #85) 20.  Because qualified immunity has not "been taken off the table," bifurcation would be improvident.  See Medina, 100 F. Supp. 2d at 898.

### 2.     Plaintiffs' Monell Claim Does Not Depend On Plaintiffs Establishing Individual Liability Under Claims I And II

In support of their motion for bifurcation, Defendants' argue that costs would be saved "[b]ecause Monell policy liability cannot be found unless there is a finding of liability against the individual defendants."   Defs. Mem. 6 (citing City of Los Angeles v. Heller, 475 U.S. 796 (1986); Treece v. Hochstetler, 213 F.3d 360 (7th Cir. 2000)).  Contrary to Defendants' position, the Seventh Circuit has explicitly stated a much narrower rule that "a municipality can be held liable under Monell, even when [the individual defendants] are not, unless such a finding would create an inconsistent verdict."  Thomas v. Cook Cnty. Sheriff's Dep't, 588 F.3d 445, 456 (7th Cir. 2009) (emphasis in original).  The Seventh Circuit concluded that "a rule that requires individual officer liability before a municipality can ever be held liable for damages under Monell . . . . is an unreasonable extension of Heller."  Thomas, 558 F.3d at 455.

Plaintiffs' Monell claim does not rise and fall based solely on Plaintiffs' success as to Counts I and II.  Even if Plaintiffs are unable to prove the individual liability of Defendants Hart, Dart, and Miller, Plaintiffs' may nonetheless succeed on their Monell claim if they are able to

14

prove a municipal custom that caused them constitutional harm.  See Thomas, 558 F.3d at 454-55.  As such, Defendants' argument in support of bifurcation is unfounded, and their motion to separate and stay discovery should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' respectfully request that this Court deny in its entirety Joint Defendants Motion to Dismiss Count III of Fourth Amended Complaint, or in the Alternative, to Bifurcate and Stay Discovery.  Plaintiffs request such other and further relief this Court deems appropriate.

Date:  July 22, 2010                                              Respectfully submitted,

                                                                 /s/ Kenneth G. Schuler
                                                                 One of the Attorneys for Plaintiffs

Kenneth G. Schuler
Lyndsay D. Speece
Marissa Downs
Alicia Weis
LATHAM & WATKINS LLP
233 South Wacker Drive
Suite 5800
Chicago, Illinois  60606
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767